**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GEORGE TREIBER,

             Plaintiff,

vs.                               Case No. 3:03-cv-1040-J-32MMH

STORCOMM, INC., a corporation,
and SAM ELLIOTT, an individual,

             Defendant.

---

**ORDER**

    This case is before the Court on Defendant StorCOMM, Inc.'s Motion for Partial

Dismissal under Fed.R.Civ.P. 12(b)(6) and for Partial Summary Judgment under

Fed.R.Civ.P. 56.  (Doc. 37).[1]  Plaintiff, George Treiber ("plaintiff"), filed separate

responses to StorCOMM, Inc.'s ("StorCOMM") motion.  (Doc. 44 & 45).[2]

---

[1]     On April 25, 2005, this Court entered an Order granting Plaintiff's Unopposed Motion for Extension of Time to Respond to Defendant's Motion for Partial Dismissal under Fed.R.Civ.P. 12(b)(6) and for Partial Summary Judgment under Fed.R.Civ.P. 56, with Incorporated Memorandum of Law (Doc. 41), and provided plaintiff a deadline of May 2, 2005 to file a response.  Inexplicably, plaintiff did not file any response until May 12, 2005.  Nevertheless, in ruling on defendant's motion, the Court will consider plaintiff's position proffered in the response to the motion as defendant has lodged no objection or motion to strike petitioning the Court not to do so.

[2]     Plaintiff's response to defendant's motion is set forth in two separate memoranda, rather than in a single memorandum.  Since the responses do not exceed the twenty page limitation in the aggregate, the Court will consider them both.

## I.    BACKGROUND

### A.    Procedural Posture and Allegations of the Amended Complaint.

This is a copyright infringement case pursuant to 17 U.S.C. §501 wherein plaintiff has pled five counts of copyright infringement (Counts III through VII), a declaratory judgment count pursuant to 28 U.S.C. §2201 (Count X), and multiple pendent state law claims (Count I - breach of contract; Count II - unjust enrichment; Count VIII - unfair competition; Count IX - breach of confidentiality and misappropriation of trade secrets; and Count XI - tortious interference with business relationships).  (Doc. 30).   The defendants are StorCOMM and Sam Elliott.[3]  (Id.).  Defendants answered the amended complaint, and StorCOMM asserted a counterclaim against plaintiff for overpayment of royalties. (Doc. 32). Plaintiff answered the counterclaim.  (Doc. 40).  StorCOMM moved to dismiss plaintiff's unfair competition and breach of confidentiality and misappropriation of trade secrets claims pursuant to Fed.R.Civ.P. 12(b)(6), and for summary judgment on plaintiff's tortious interference claim pursuant to Fed.R.Civ.P. 56.  (Doc. 37).

The allegations and claims in the amended complaint concern the purported breach of the September 29, 1995 Technology License Agreement ("license agreement"), to which plaintiff and two of his predecessors in interest, ACE Software, Inc. ("ACE") and

---

[3]    The only claims pled against Elliott in the amended complaint are the five copyright infringement claims.   Those claims are not at issue in this motion. Accordingly, Elliott did not file a response.

Distributed Technologies, Inc. ("DTI"), were signatory with StorCOMM, and alleged infringing conduct concerning five of plaintiff's registered copyrights. (Doc. 30). ACE and DTI developed certain computer software products, including the Medical Workflow and Communications Toolkit ("the Toolkit Software"), to manage medical multi-media information that improved the speed with which medical care was delivered.[4] (Id. at ¶¶ 13-15). This software is also used to share information with other medical computer systems. (Id. at ¶ 15).

Under the license agreement, StorCOMM obtained the Toolkit Software, including the intellectual property embedded within, and distributed and re-sold the product. (Id. at ¶¶ 16, 42-43). The intellectual property at issue consists of five separate copyrights. (Id. at ¶¶ 110-129). These components of the Toolkit Software contain further embedded licensed elements that fall within the purview of the copyrighted material. (Id.).

The license agreement also allowed defendant to "modify, adapt, and prepare derivative works of the [s]oftware," and, among other things, to "sell and distribute" the software, but only in a certain form. (Id. at ¶¶ 41-44). The license agreement granted plaintiff royalty fees based on the sale of certain system components, including the Toolkit Software. (Id. at ¶ 45).

---

[4]    ACE and DTI were Florida corporations that are now dissolved. (Id. at ¶¶ 2-3). Plaintiff alleges he is the successor in interest to the intellectual property that is the subject of the lawsuit. (Id. at ¶¶ 4-5).

Plaintiff alleges that defendant breached the license agreement by failing to pay the royalty fees after December 9, 1999.  (Id. at ¶ 95).  Plaintiff further alleges that after the termination of the license agreement on September 13, 2001, defendant continued to use and profit from the distribution of the Toolkit Software, which contains plaintiff's copyrighted material.  (Id. at ¶¶ 96, 104-108).  Plaintiff alleges that these actions violate the Copyright Act due to the unauthorized use and distribution in the market of the intellectual property imbedded within the Toolkit Software.  (Id. at ¶¶ 110-129).

## B.    Summary Judgment Facts.

In support of its motion for summary judgment, StorCOMM submits the affidavit of Mr. Robert J. White, Executive Vice President of Sales and Marketing at SourceOne Healthcare Technologies, Inc. ("SourceOne").[5]  (Doc. 37, White Aff., ¶ 1).  In opposition to StorCOMM's motion, plaintiff submits his own affidavit.  (Doc. 46, Treiber Aff.).  As required by summary judgment practice, the Court states the facts in the light most favorable to the plaintiff.

Plaintiff's dispute with StorCOMM began in August 2001, at which time he placed StorCOMM on notice that it was in breach of the license agreement.  (Doc. 46 at ¶ 2). Shortly thereafter, on November 1, 2001, plaintiff apparently severed ties with StorCOMM and began working for Diagnostic Imaging ("DI").  (Id. at ¶ 3).  In November 2002,

---

[5]      StorCOMM is a supplier of SourceOne.  (Doc. 37 at ¶4).

SourceOne acquired the assets of DI, and, consequently, plaintiff became an employee of SourceOne.  (Id. at ¶ 4).  In this acquisition, SourceOne obtained the December 1, 2001 Software Distribution Agreement ("distribution agreement") between DI and StorCOMM.  (Id. at ¶ 5).  Plaintiff contends that this provided notice to SourceOne of plaintiff's dispute with StorCOMM.  (Id.).

Moreover, since the inception of plaintiff's employment with DI and SourceOne, various SourceOne executives, including Dave Georges and Chris O'Brien, the Vice Presidents of Marketing and Operations, respectively, were aware of the dispute.  (Id. at ¶¶ 6-8).  In May or June 2003, plaintiff informed White about his "claims" against StorCOMM.  (Id. at ¶ 9).

In early 2004, William W. Patterson, Chief Operating Officer of StorCOMM, contacted White via telephone and engaged in some discussion about plaintiff's lawsuit against StorCOMM.  (Doc. 37 at ¶¶ 4-5).  Shortly thereafter, White terminated plaintiff's employment with SourceOne.  (Id. at ¶ 8).  The reason provided for the termination was that plaintiff's failure "to notify SourceOne's Legal and/or Human Resources Departments that he contemplated filing a lawsuit or had filed a lawsuit against a supplier," like StorCOMM, constituted a serious breach of the SourceOne Code of Business Ethics and Conduct ("code of ethics").  (Id. at ¶¶ 7-8).

## II.    APPLICABLE STANDARDS

When considering a motion to dismiss under Rule 12(b)(6), a court must accept the allegations of the plaintiff's complaint as true and construe the allegations in the light most favorable to the plaintiff.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  A complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lopez v. First Union Nat'l Bank, 129 F.3d 1186, 1189 (11th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  While there may be a dispute that the alleged facts are the actual facts, when reviewing a motion to dismiss, a court is required to accept the allegations in the complaint as true.  St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).  Rule 12(b)(6) authorizes a court to dismiss a complaint on a dispositive issue of law.  Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  Id. at 249-50.  When ruling on a motion for summary judgment, the court

must avoid weighing conflicting evidence or making credibility determinations. Id. at 255.

Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences

are to be drawn in his favor." Id.

## III.   DISCUSSION

### A.   Unfair Competition.

StorCOMM contends that section 301(a) of the Copyright Act, 17 U.S.C. §100, et

seq., preempts plaintiff's unfair competition[6] claim because that claim is substantively

indistinguishable from plaintiff's copyright claims.  (Doc. 37).  Section 301(a) of the

Copyright Act "preempts all state causes of action based on a right found in the Act or an

equivalent to such a right."  Foley v. Luster, 249 F.3d 1281, 1285 (11th Cir. 2001).  To

determine whether a state law cause of action is based on a right found in the Copyright

Act, the Eleventh Circuit employs the "extra element" test.  Id.  "Under this test, if an extra

element is required instead of or in addition to the acts of reproduction, performance,

---

[6]     Defendant also attaches the affidavit of attorney Steven B. Feigenbaum as an exhibit to the motion to dismiss stating plaintiff has abandoned his unfair competition claim, and that dismissal with prejudice is appropriate.  It is not appropriate for this court to consider the affidavit and the correspondence appended thereto as the Court is confined to the four corners of the amended complaint when ruling on a Fed.R.Civ.P. 12(b)(6) motion.  See Pinellas County, 285 F.3d at 1337.  Even if the Court did consider the affidavit and the correspondence attached thereto, while it appears that plaintiff's counsel intended to dismiss the unfair competition claim with prejudice pursuant to Fed.R.Civ.P. 41, the docket reflects that the Notice of Dismissal was never filed.  Therefore, the dismissal of the unfair competition claim was never effectuated.

distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption." Id. (quoting Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992)) (quotations omitted).

Florida common law requires that a party establish deceptive or fraudulent conduct of a competitor and likelihood of customer confusion to prevail on an unfair competition claim. Stagg Shop of Miami, Inc. v. Moss, 120 So. 2d 39, 40-41 (Fla. 2d DCA 1960); Professional Golfers Ass'n v. Banks Life & Casualty Co., 514 F.2d 665, 671 (5th Cir. 1975) ("[L]ikelihood of consumer confusion and passing off one's goods or services as those of another constitute the gravamen of [an unfair competition claim]"). However, in analyzing an unfair competition claim under Florida common law, this Court, along with the Southern District of Florida, have recognized that the precise elements of the claim are somewhat elusive. Audio Systems of Florida, Inc. v. Simplexgrinnell LP, 68 U.S.P.Q.2d 1681, 1684 (M.D. Fla. 2003) (quoting Stoneworks, Inc. v. Empire Marble and Granite, Inc., 49 U.S.P.Q.2d 1760 (S.D. Fla. 1998)) (recognizing "unfair competition acts as an 'umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practices in industrial or commercial matters") (internal quotations omitted).

The Eleventh Circuit, and at least one district court within, have considered whether section 301(a) of the Copyright Act preempts an unfair competition claim, and made

differing determinations based on the specific facts of each case.  See, e.g., Lipscher v. LRP Publications, Inc., 266 F.3d 1305, 1312 (11th Cir. 2001) (affirming dismissal of unfair competition claim because it was based on "acquisition misconduct," and, since acquisition of a work is a necessary condition to copying it, there is no "extra element" removing it from the general scope of a copyright claim); Donald Frederick Evans and Assoc., Inc. v. Continental Homes, Inc., 785 F.2d 897, 914 (11th Cir. 1986) (reversing the district court's grant of directed verdict on unfair competition claim because it involved "passing off" allegations, or allegations of customer confusion, which is a different "element" than the mere copying in the manufacture of a product); Audio Systems, 68 U.S.P.Q.2d at 1684 (in absence of allegations of "passing off," or customer confusion, unfair competition claim is preempted because it was based solely on the alleged "unauthorized use of Plaintiff's proprietary software," which is indistinguishable from a copyright claim).

Here, plaintiff's amended complaint satisfies the "extra element" test as he alleges that StorCOMM is not only using copyrighted material and creating derivative works in violation of the Copyright Act and license agreement, but also that these "wrongful acts," in conjunction with the marketing of these products, will cause, among other things, customer confusion and resulting damage to plaintiff.  (Doc. 30 at ¶¶ 80, 81, 132).[7]  While

---

[7]     Plaintiff incorporates paragraphs 80 and 81 into the unfair competition count.

it is not entirely clear that the allegations of the unfair competition claim are materially different in substance than the copyright claims, given the Eleventh Circuit precedent and the liberal pleading standards applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), plaintiff has sufficiently pled an "extra element."

### B.    Breach of Confidentiality and Misappropriation of Trade Secrets.

Count IX of plaintiff's amended complaint pleads "Breach of Confidentiality and Misappropriation of Trade Secrets." (Id. at ¶¶ 135-140).  In the response to StorCOMM's motion to dismiss on the grounds that Florida's Uniform Trade Secrets Act, Fla. Stat. §688.001, et seq., preempts the common law misappropriation of trade secrets claim, plaintiff asserts that defendant improperly lumps the trade secret language with the breach of confidentiality language, and makes the "incorrect leap" that Fla. Stat. §688.008 preempts the entire count.[8]

Florida's Uniform Trade Secret Act preempts common law torts concerning trade secret misappropriation.  See Fla. Stat. §688.008(1); see also All Pro Sports Camp, Inc. v. Walt Disney Co., 727 So. 2d 363, 367 (Fla. 5th DCA 1999) (holding Florida's trade secret statute displaces common law tort claims concerning trade secret

_____

[8]      Fla. Stat. §688.008, states, in pertinent part:

(1) Except as provided in subsection (2), ss. 688.001-688.009 displace conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret....

-10-

misappropriation); <u>Del Monte Fresh Produce Co. v. Dole Food Co., Inc.</u>, 136 F.Supp.2d 1271, 1291 (S.D. Fla. 2001) (holding same).  Even though plaintiff styled Count IX as "Breach of Confidentiality and Misappropriation of Trade Secrets," a close reading illustrates that the claim is based solely upon an alleged breach of the confidentiality clause of the license agreement, and not misappropriation of any trade secret.  (Doc. 30, ¶¶ 135-140).  Plaintiff asserts in paragraphs 136 and 137 of the amended complaint that defendant breached the confidentiality clause of the license agreement by misusing confidential information to which it was entrusted; plaintiff may proceed on this theory.  While StorCOMM is correct that Fla. Stat. §688.008[9] preempts a common law misappropriation of trade secrets claim, plaintiff has not pled such a claim.

   **C.    Tortious Interference.**

   StorCOMM contends it is entitled to summary judgment on Count XI (Tortious Interference) of the amended complaint.  Under Florida law, the elements of the common law claim for tortious interference with business relationships are: (1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship.  <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So. 2d 812, 814 (Fla. 1994) (citing <u>Tamiami Trail Tours, Inc.</u>

_____

   [9]    Plaintiff has likewise pled no claim under Fla. Stat. §688.001, et seq.

v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985)).

The first two elements are undisputed.  There is a factual dispute ripe for determination by the factfinder pertinent to the third element:  whether StorCOMM intentionally and unjustifiably interfered with plaintiff's employment relationship with SourceOne. The parties have presented conflicting affidavits as to when SourceOne knew about plaintiff's legal claims against StorCOMM, and what bearing that knowledge actually had on plaintiff's termination from SourceOne.  (Doc. 37, White Aff., ¶¶ 3-5, 7; Doc. 46, Treiber Aff., ¶ 9).

Robert White contends that he first learned of plaintiff's dispute with StorCOMM during a telephone call with William Peterson, StorCOMM's Chief Operating Officer, in early 2004.  (Doc. 37, White Aff., ¶¶ 3-5).  White further contends that the presence of the "lawsuit," or even the fact that plaintiff "contemplated filing a lawsuit" against StorCOMM, a supplier of SourceOne, coupled with plaintiff's failure to properly report this to SourceOne, violated SourceOne's code of ethics, necessitating plaintiff's termination.  (Id. at ¶¶ 3-8).  Plaintiff avers that he informed White of his "claims" against StorCOMM sometime in May or June 2003 - well before his termination.  (Doc. 46, ¶ 9).  Plaintiff further avers that not only was White aware of his dispute with StorCOMM, but other SourceOne executives likewise had knowledge of the dispute.  (Id. at ¶¶ 6-8).  Taking this conflicting evidence in the light most favorable to plaintiff, a factfinder could determine that Peterson did not first inform White of plaintiff's legal dispute with StorCOMM, and that,

-12-

instead, Peterson telephoned White to interfere with plaintiff's employment relationship with SourceOne.[10]  Whether SourceOne permissibly terminated plaintiff due to a code of ethics violation, or whether StorCOMM contacted SourceOne to unjustifiably interfere with plaintiff's employment and plaintiff consequently suffered damages because of that contact, is ripe for determination by the factfinder.

When the Court must weigh conflicting renditions of material facts, in this case via affidavit, and determine credibility of witnesses, summary judgment is inappropriate. See Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993), rh'g denied, 16 F.3d 1233 (1994) (en banc) (noting a court must not weigh conflicting evidence nor make credibility determinations when ruling on a motion for summary judgment).  Viewing the facts in the light most favorable to plaintiff, this Court determines that there are genuine issues of material fact concerning plaintiff's tortious interference claim.

It is hereby **ORDERED**:

Defendant, StorCOMM, Inc.'s, Motion to Dismiss and Motion For Partial Summary

---

[10]    Plaintiff also asserts in his affidavit (Doc. 46) that when SourceOne acquired the assets of Diagnostic Imaging ("DI") in 2002, SourceOne acquired the 2001 Software Distribution Agreement ("distribution agreement") between DI and StorCOMM.  (Doc. 46, ¶¶ 4-5).  Plaintiff contends that a portion of the distribution agreement provides notice of plaintiff's legal dispute with StorCOMM.  (Id.).  The affidavit states that the distribution agreement is attached.  The distribution agreement was not attached to plaintiff's affidavit, and a review of the docket shows that the distribution agreement has not been filed.  Nevertheless, this Court decides the motion for summary judgment without regard to the contents of that document.

Judgment (Doc. 37) is **DENIED.**  The Court is aware of plaintiff's request for oral argument (Doc. 43), but has determined that oral argument is unnecessary.

      **DONE AND ORDERED** at Jacksonville, Florida this 16th day of August 2005.

                                         TIMOTHY J. CORRIGAN
                                         United States District Judge

t.
Copies to counsel of record

-14-